## TOM HARDIN v. THE STATE.

### No. 3803.   Decided December 4, 1907.

**1.—Killing Child During Parturition.**

In this offense it must be shown that but for the act of the accused the child would have been born alive.

**2.—Same—Continuance—First Application.**

Where upon trial for felony the motion for continuance showed that the testimony of the absent witnesses was material and important; that the defendant was in jail without counsel; that he requested the sheriff to have process issued for all his witnesses; that his attorney was 150 miles away; that it was his first application for continuance, the same should have been granted.

**3.—Same—Insufficiency of Evidence.**

Where upon trial for unlawfully killing a child during parturition where the evidence failed to show that the child was in a state of being born at the time of the destruction of its life, during parturition of the mother and before actual birth, and but for the destruction of its life by defendant the child would have been born alive, the conviction could not be sustained.

Appeal from the District Court of Palo Pinto.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of unlawfully destroying the life of a child during parturition; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Scott,* for appellant.—Taylor's Medical Jurisprudence, 513; Whitehead on Abortion and Sterility, 252; Soyjours Ann. Cyc. of Practical Medicine, vol. 1, pp. 45–48.   On question of presumptions:   Billard v. State, 30 Texas, 367; Evers v. State, 31 Texas Crim. Rep., 318.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was indicted under article 645, Penal Code, which reads as follows:   "If any person shall, during parturition of the mother, destroy the vitality or life in a child, in a state of being born, and before actual birth, which child would otherwise have been born alive, he shall be punished by confinement in the penitentiary for life, or any period not less than five years, at the discretion of the jury."   A few of the preceding articles deal with the question of abortion, the ingredients of which offense is somewhat different from the one above quoted.   It is not necessary for abortion that the child should be in a condition of being born alive.   In this offense it is a prerequisite, and further that but for the act of the accused the child would have been born alive, and this offense differs also from that of infanticide, for in the latter case the child must be born alive in order that its death may be brought within the definition of that offense.

The evidence, without going into detail, in substance, shows that on Wednesday before this offense should have occurred on Friday, appel-

lant left the camp where he and his wife and little child were, and had gone to the town of Mineral Wells and become intoxicated, and remained in Mineral Wells until Friday. During his absence from his camp his wife was taken violently ill and a message sent to him to come at once, as his wife was dying. This message was sent Wednesday or Thursday; he came home in a drunken condition on Friday. The State's case is to the effect that when he returned, being informed of the condition of his wife, he immediately got in the wagon where she was, and, among other things, sat down upon her stomach. A State's witness testified, in substance, that the wife had some labor symptoms, and after he sat on her stomach these all ceased; that she was seriously ill and died on Saturday evening. One of the State's witnesses, an old lady, testified that she had noticed the movement of an unborn child, indicating that in her judgment it was alive just prior to the time appellant sat on his wife. On Saturday evening a physician reached the scene after the death of appellant's wife, and took from her a dead child of seven or eight months' advance in gestation. He did not observe any bruises or anything that indicated that the child had been injured. The examination of the two physicians who testified was very unsatisfactory; one of them testified that in his judgment a child of eight months' gestation would not live, but on the crucial point in the case there is a wonderful scarcity of testimony from the two physicians, and practically the only testimony in regard to the possibility of the child being born alive was from the old lady, whose testimony is above mentioned, to the effect that she had noticed two movements about the stomach of the mother, indicating to the witness' mind that she was in child labor. The physicians indicate that this was practically worthless testimony, or that such movement was not a criterion by any means indicating child labor, or that the child was alive; it might occur from contraction of the muscles and other matters they mention. Defendant introduced some testimony to the effect that he did not sit down on his wife; that when he reached the place and found out the condition of his wife, he became very much excited, and was drinking and got in the wagon, and laid down by her, and kissed her and threw one leg over her, and in order to relieve the situation they took him out of the wagon and actually tied him so he could not come where she was as she was totally unconscious, and the testimony showed that she was unconscious, if not entirely insane, from the time she was taken ill at the beginning of her troubles, which ended in her death. Appellant testified also in his behalf to the effect that he and a family or two were in company with each other going to Palo Pinto County, and in their travels passed through Parker County and camped on one occasion, and that while getting their meal, he fed the horses in a tub, and that while the horses were eating, one of them kicked the other; his wife happened to be near them at the time and it frightened her very much and she fell over the tub and hurt herself. This was a week or such matter before her death, and from that time on she would have something like fits or convulsions

and seemed to be irrational at times, and that these convulsions grew worse as they occurred. Appellant sought a continuance on account of these witnesses, several in number, Bob Barry and wife, Charles Cross, Jake Worsham and Will Hay and wife, who were present when appellant's wife fell over the tub, and some of whom if present would have denied any cruel treatment of defendant towards his wife, and by the witnesses Will Hay and wife he would have proved that they had been together several months with his wife; that his wife was in very bad health and that more than a month before her death she had been having chills; that on Saturday before her death she had a severe fall and complained all the time and would have slight convulsions every night. This is the recitation in the bill of exceptions. In the application itself, it is stated that he would prove by Berry and wife that he left them to go to Palo Pinto County; that his wife and child were sick, and that he was always kind and attentive to his family; by the witness Hay and wife he expected to prove that they traveled together for more than a month; that during said time, on Saturday before she died, she received an injury from which she suffered continually and was insensible at times after receiving said injury, and until she died. The indictment was presented against appellant on the 7th of March; process was issued on the 8th of March for Cross and returned on the 11th; process for Worsham was issued on the 9th of March; process was not issued at all for Hay and wife because defendant was in jail and his attorney lived more than one hundred and fifty miles away, and was not notified of the action of the grand jury until the evening of March 9th, and the defendant not being able to employ local counsel, relied on the sheriff to subpœna all the witnesses in the examining trial and so instructed him. The judgment was rendered on the 15th of March. This was the first application. We believe under the circumstances that this continuance should have been granted and there was error in refusing it. While perhaps the diligence was not of the strictest character, yet it is not so important in the first application for a continuance. Appellant testified to the facts himself, but the rule with regard to cumulative testimony does not apply to the first continuance, especially where the defendant himself is practically the only witness in his own behalf. This case evidently excited considerable commotion as is developed by this record as appellant was indicted for the murder of his wife, and we judge from the state of the record that the testimony in both cases would be the same. The diligence as to some of the witnesses we think ample; perhaps not as to Hay and wife, but appellant was in jail without counsel, and his statement in the application is that he requested the sheriff to have process issued for all the witnesses who were at the examining trial, his attorney being one hundred and fifty miles away. So we are of opinion that, under the circumstances detailed here, and the importance of absent testimony, appellant should have had the continuance to secure the attendance of the absent witnesses.

Without going over and restating the facts, or going further into de-

tail, we do not believe the State has shown a case under the statute under which this indictment is framed. Before a conviction can be had under this statute, the vitality or life of the child must be shown; that it was in a state of being born at the time of the destruction of its life, and that during parturition of the mother and before actual birth the life of the child must be destroyed, and but for the destruction of its life the child would have been born alive. The testimony does not, in our judgment, meet the requirements of the statute. The sitting down by appellant upon his wife, if that be conceded, was an outrageous piece of conduct on the part of a drunken husband, but that of itself does not prove the fact that the child was alive at the time or that the mother was in the act of giving birth to a live child, or that it would have been born alive but for that act on his part or that he intended to destroy his unborn child. It is a circumstance or a fact to be considered along with other facts. The two facts relied upon by the State, is the one just stated, and the other was that one of the witnesses, a lady, testified that she saw two convulsive actions in the abdomen of the mother, indicating the movement of a child, which, in her judgment, indicated labor pains or that she was in the act of being delivered of a child. These were facts upon which the State's case is predicated. The physicians' testimony rather excludes any theory of harm to the child, and shows that the testimony of the lady was too uncertain to be relied upon at all as evidence of child labor, and there is no other fact in this record that we have been able to find that the child was alive at the time or that it would have been born alive, and there is no evidence about the child when taken from its mother the next day by the physician of any bruise or any indication that harm had come to it. As this case is presented, we are of opinion that it is not made out within the purview of this statute.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Henderson, Judge, absent.