124 N.J. Super. 475 (1973)
307 A.2d 644
STATE OF NEW JERSEY, PLAINTIFF,
v.
ANN HAREN, THERESA MARANO AND MILDRED DONATO, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 26, 1973.
*476 Mr. Alfred J. Luciani, Deputy Attorney General, for plaintiff (Mr. George F. Kugler, Jr., Attorney General, attorney).
Mr. Anthony D. Rinaldo, Jr. for defendant Mildred Donato (Messrs. Rinaldo and Rinaldo, attorneys).
Mr. Leonard Meyerson for defendants Ann Haren and Theresa Marano (Messrs. Miller, Hochman, Meyerson and Miller, attorneys).
LARNER, A.J.S.C.
Defendants were indicted on October 23, 1969 for using instruments on a pregnant woman to *477 commit an abortion, in violation of N.J.S.A. 2A:87-1, and for conspiracy to commit that offense. They now move to dismiss the indictment on the ground that the New Jersey abortion statute is unconstitutional and no longer viable in light of the recent opinions of the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).
In Roe plaintiff was a pregnant single woman who sought a declaratory judgment that the Texas criminal abortion statute was unconstitutional and that an injunction issue restraining its enforcement. After finding that she had standing to bring the action the majority of the court concluded that the Texas statute violated plaintiff's right of privacy, whether such right is encompassed within the concept of the Fourteenth Amendment restricting state action and fostering personal liberty, or within the concept of the Ninth Amendment's reservation of rights to the people. This conclusion, however, was qualified by the determination that the state had a correlative interest in regulation of that right.
As a consequence, the court established certain limits or guidelines within which a state may validly regulate abortions because of its "important and legitimate interest in preserving and protecting the health of the pregnant woman." In its holding in Roe, the Supreme Court determined that the Texas statute, which excepts from criminality only a life-saving procedure on behalf of the mother, was unconstitutional.
Justice Blackmun's synthesis of the court's holding is significant:
This holding, we feel, is consistent with the relative weights of the respective interests involved, with the lessons and example of medical and legal history, with the lenity of the common law, and with the demands of the profound problems of the present day. The decision leaves the State free to place increasing restrictions on abortion as the period of pregnancy lengthens, so long as those restrictions are tailored to the recognized state interests. The decision vindicates the right of the physician to administer medical treatment *478 according to his professional judgment up to the points where important state interests provide compelling justifications for intervention. Up to those points the abortion decision in all its aspects is inherently, and primarily, a medical decision, and basic responsibility for it must rest with the physician. If an individual practitioner abuses the privilege of exercising proper medical judgment, the usual remedies, judicial and intra-professional, are available.
Our conclusion that Art. 1196 is unconstitutional means, of course, that the Texas abortion statutes, as a unit, must fall. The exception of Art. 1196 cannot be stricken separately, for then the State is left with a statute proscribing all abortion procedures no matter how medically urgent the case. [at 733 of 93 S.Ct.]
In Doe, supra, the Supreme Court set aside certain provisions and restrictions of a modern Georgia abortion statute, finding that some of the requirements therein were unconstitutional as being beyond the scope of legitimate state regulation.
Before entering into a discussion of the impact of the foregoing Supreme Court decisions on the New Jersey statute, it is important to note that all three defendants herein are laymen, having no right or license to practice medicine. Hence, the question presented to the court is whether the Roe and Doe decisions render our criminal abortion statute unconstitutional and no longer viable as applied to laymen indicted thereunder.
The answer to this question has been furnished by the United States Supreme Court in subsequent litigation in Cheaney v. Indiana, 410 U.S. 991, 93 S.Ct. 1516, 36 L.Ed.2d 189 (1973). In that case the Supreme Court of Indiana had affirmed a conviction of the defendant under its criminal abortion statute, rejecting the contention that the statute was unconstitutional because it deprived a woman of her right of privacy denied equal protection to the poor, and was unconstitutionally vague because of the exception "unless such miscarriage is necessary to preserve her life." Cheaney v. State, 285 N.E.2d 265 (Ind. Sup. Ct. 1972). This decision was rendered prior to the determination of Roe and Doe.
The defendant then applied for certiorari to the United States Supreme Court, which petition came up for consideration *479 after the decisions in Roe and Doe. The state's brief in opposition to the petition raised the question of the applicability of Roe and Doe because of lack of standing of petitioner as a non-physician. As a consequence the court had presented to it on the petition for certiorari the issue whether Roe was intended to nullify the effect of a state criminal abortion statute at the behest of a person who was neither a physician nor a pregnant woman. Although petitioner was a convicted defendant in a prosecution under an abortion statute similar to that which existed in Texas (and similar to that in New Jersey), the majority of the Supreme Court denied certiorari in a cryptic opinion reading:
Cheaney v. Indiana, 410 U.S. 991, 93 S.Ct. 1516, 36 L.Ed.2d 189 Petition for writ of certiorari to the Supreme Court of Indiana denied for want of standing of petitioner. Doremus v. Board of Education of Borough of Hawthorne, et al. 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475.
Justice Douglas concurred in the denial of certiorari on broader grounds by noting:
Mr. Justice Douglas would deny certiorari on the grounds that petitioner, who was convicted of performing an abortion, is not a doctor and that the decisions of this Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 were confined to the condition: inter alia, that the abortion, if performed, be based on an appropriately safeguarded medical judgment.
Whether we accept the rationale of the majority or that of Justice Douglas, it is manifest that the Supreme Court never intended that Roe be applied so as to compel the voiding of a criminal abortion statute or the termination of criminal proceedings thereunder where the moving party is not a licensed physician. See the following cases decided before Cheaney: May v. State, 492 S.W.2d 888 (Ark. Sup. Ct. 1973); cf. State v. Hultgren, 204 N.W.2d 197 (Minn. Sup. Ct. 1973); People v. Frey, 294 N.E.2d 257 (Ill. Sup. Ct. 1973).
*480 Based upon the foregoing treatment of the Cheaney application for certiorari by the United States Supreme Court, this court must reach the conclusion that defendants do not have the standing to attack the constitutionality of the New Jersey criminal abortion statute, nor, as a corollary, the prosecution thereunder. The decision in Roe does not constitute a sweeping annihilation of every criminal abortion statute which fails to qualify under the regulation standards set forth in that opinion, without regard to the position of the individual involved in the violation of that statute.
The contention of defendants that the statute must fall as a total unit because it does not make a distinction between laymen and physicians is therefore untenable. The statute is and can still remain as a viable basis for a criminal charge where it is sought to be applied to the acts of a layman unsupervised by a physician. Under such circumstances the acts are "without lawful justification."
Defendants further attack the constitutionality of the statute on the ground of vagueness, contending that the statutory phrase "without lawful justification" is ambiguous and overly broad, and therefore prevents one from knowing when an abortion would be justified. In State v. Moretti, 52 N.J. 182, 192 (1968), our Supreme Court dealt with this very problem and held that "a defendant whose conduct was such that he clearly could tell that it was prohibited will not be heard to say that the statute is overly broad and that another, in some hypothetical case, could be misled." See Gleitman v. Cosgrove, 49 N.J. 22 (1967).
As further observed by the United States Supreme Court in the context of a federal criminal statute
In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. [United States v. National Dairy Products Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963)].
In the context of the foregoing criterion it is manifestly clear that any layman who commits or attempts to commit *481 an abortion on a woman knows full well that his or her acts are not lawfully justified, whether pre-Roe or post Roe-law is applied.
In Y.W.C.A. of Princeton, N.J. v. Kugler, 342 F. Supp. 1048 (D.N.J. 1972), vacated and remanded 475 F.2d 1398 (3 Cir.1973), a civil case instituted by physicians, a three-judge Federal District Court for the District of New Jersey decided that the statutory language "without lawful justification" was unconstitutionally vague as failing to provide adequate warning of the sphere of activity prohibited by the statute. However, after the decisions in Roe and Doe, supra, the United States Court of Appeals for the Third Circuit vacated the judgment of the District Court and remanded the case for consideration in the light of the Supreme Court's opinions.
The District Court holding thus has no precedential value either as binding or persuasive on the determination by this court.
In view of the foregoing, the motion to dismiss the indictment is denied.