

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

August 13, 1974

The Honorable Ted Butler
Criminal District Attorney
Bexar County Courthouse
San Antonio, Texas 78204

Opinion No. H- 369

Re:  Present status of
Texas laws concerning
abortion.

Dear Mr. Butler:

We have had numerous requests, both written and oral, for information concerning the present status of the Texas laws concerning abortion following the decisions by the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973) and Doe v. Bolton, 410 U.S. 179, 35 L. Ed. 2d 201, 93 S. Ct. 739 (1973). Specifically you have asked us what Articles of the present Penal Code, relating to abortion, are now valid and enforceable. Further, since Roe v. Wade declared the Texas statutes unconstitutional, you ask: "[W]hat guidelines and standards should now be used in reference to 'abortions' in this State?"

### STATUS OF TEXAS LAW

The Texas laws against abortion were found in Chapter 9 of the Penal Code, Articles 1191 to 1196, which were:

> Article 1191. If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two

nor more than five years; if it be done without her consent, the punishment shall be doubled.  By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused.


Article 1192.  Whoever furnished the means for procuring an abortion knowing the purpose intended is guilty as an accomplice.


Article 1193.  If the means used shall fail to produce an abortion, the offender is nevertheless guilty of an attempt to procure abortion, provided it be shown that such means were calculated to produce that result, and shall be fined not less than one hundred nor more than one thousand dollars.


Article 1194.  If the death of the mother is occasioned by an abortion so produced or by an attempt to effect the same it is murder.


Article 1195.  Whoever shall during parturition of the mother destroy the vitality or life in a child in a state of being born and before actual birth, which child would otherwise have been born alive, shall be confined in the penitentiary for life or for not less than five years.

Article 1196.  Nothing in this chapter applies to
an abortion procured or attempted by medical advice
for the purpose of saving the life of the mother.

All of these, with the exception of Article 1195, were under attack in
Roe  v.  Wade (410 U.S. at 117).

The holding in Roe v. Wade was that Article 1196, excepting from
criminality only a lifesaving procedure on behalf of the mother without
regard to the state of pregnancy and without recognition of other involved
interests, violated the Due Process Clause of the Fourteenth Amendment.
The Court further concluded that, because Article 1196 was unconstitutional,
the other abortion statutes of Texas also fell.  "The exception of Art. 1196
cannot be stricken separately, for then the State is left with a statute pro-
scribing all abortion procedures no matter how medically urgent the case."
(410 U.S. at 166)

Article 1195, presently Art. 4512.5, V.T.C.S., is left unaffected.
However, Art. 4512.5 is not, in truth, an abortion statute.  The elements
of the offense there described require that the child "be in a state
of being born"; "that the mother was in the act of giving birth to a
live child", Hardin v. State, 106 S.W. 352 (Tex. Crim., 1907) holding that
the ingredients of the statute were somewhat different from those of the
abortion statute.

Article 4512.5 is not repealed by the 1973 Penal Code (Acts 1973, 63rd
Leg., ch. 399, p. 996e, Section 3).  Therefore, it continues as a prohibition
of a crime of its very precise definition.

The 1973 Penal Code (Acts 1973, 63rd Leg., ch. 399, p. 883, Section 1)
contains no specific prohibition of abortion.  It does, in Chapter 19, define
various types of criminal homicide, but each of them is made to involve the
death of an "individual" defined in Section 1.07(a)(17) to be a "human being
who has been born and is alive".  This statute has not yet been construed
but we doubt that the courts will construe its provisions to apply to an unborn
fetus.  Doe v. Israel, 482 F.2d 156 (1st Cir. 1973), cert. denied, 42 U.S.L.W.
3627 (U.S. May 14, 1974); Doe v. Israel, 358 F.Supp. 1193 (D.R.I. 1973);
Rogers v. Danforth, Civil Action No. 18360-2 (W.D. Mo. May 18, 1973) (3
judge ct.) aff'd. mem., 414 U.S. 1035, 42 U.S.L.W. 3305 (Nov. 20, 1973).

Therefore, there presently are no effective statutes of the State of
Texas against abortion, per se.

## TYPES OF REGULATIONS PERMITTED UNDER SUPREME COURT OPINION

In <u>Roe v. Wade,</u> supra, the majority opinion concluded with this summary:

1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a <u>life saving</u> procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary in appropriate medical judgment, for the preservation of the life or health of the mother.

2. The state may define the term 'physician', as it has been employed in the preceding numbered paragraphs of this Part XI of this opinion, to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined. (410 U.S. at 164, 165)

On the same day that Roe v. Wade was decided, the Supreme Court of the United States also decided Doe v. Bolton, supra, involving Georgia's statute regulating the performance of abortions. The main thrust of the opinion in Doe v. Bolton is that a state may not impose upon abortion burdensome regulations bearing little relationship to the purposes of the act. Thus, in holding unconstitutional a requirement that abortions be performed only in hospitals accredited by the Joint Commission on Accreditation of Hospitals, the Court said: "It is a requirement that simply is not based on differences that are reasonably related to the purposes of the Act in which it is found . . . ." (410 U.S. at 194)

The following discussion indicates what we believe to be some of the restrictions which presently exist upon the performance of abortion or which may be imposed by proper statutory enactment.

I. Requirement that Abortion Be Performed by a Licensed Physician

Justice Douglas, in his concurring opinion in Roe v. Wade, said:

> There is no doubt that the State may require
> abortions to be performed by qualified medical
> personnel. The legitimate objective of preserving
> the mother's health clearly supports such laws.
> Their impact upon the woman's privacy is minimal.
> (410 U.S. at 216)

Since Roe v. Wade and Doe v. Bolton, convictions have been upheld for the performance of abortions by persons not licensed to practice medicine. May v. State of Arkansas, 492 S.W.2d 888 (Ark. 1973) cert. denied, 414 U.S. 1024 (1973); Spears v. State of Mississippi, 278 So.2d 443 (Miss. 1973); People v. Bricker, 208 N.W.2d 172 (Mich. 1973); State v. Ingel, 308 A.2d 223 (My.Spec.App. 1973); State v. Haren, 307 A.2d 644 (N.J. Super.Ct., L. Div. 1973). See Justice Douglas' comments on the denial of certiorari in Cheaney v. Indiana, 410 U.S. 911 (1973). Compare, State of New Mexico v. Strance, 506 P.2d 1217 (N.M. 1973); People v. Frey, 294 N.E.2d 257 (Ill. 1973); State v. Hultgren, 204 N.W.2d 197 (Minn. 1973).

Article 4510, Vernon's Texas Civil Statutes, defines those who are regarded as practicing medicine within this state.   Art. 4501a, V. T. C. S. defines "practicing medicine" in a similar manner as follows:

Any person shall be regarded as practicing medicine within the meaning of this Chapter:

1.   Who shall publicly profess to be a physician or surgeon and shall diagnose, treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof.

2.   Who shall diagnose, treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation;

. . .

Practicing medicine without a license is made a misdemeanor punishable by fine or imprisonment for not more than thirty days.   Articles 4498.1 and 4510b, V. T. C. S.

Although it has been held that in the delivery of a child a midwife is not engaged in the illegal practice of medicine as defined by Art. 4510a, formerly Art. 714, V. T. P. C.[ Banti v. State, 289 S. W. 2d 244 (Tex. Cr. 1956), Attorney General Opinion WW-1278 (1962); compare Vlassis v. State, 286 S. W. 2d 934 (Tex. Cr. , 1956); De Hay v. State, 254 S. W. 2d 513 (Tex. Cr. 1952)], we believe that the performance of an abortion presents a significantly different factual situation and would constitute a basis for prosecution under Articles 4498.1 and 4510b.

It is our opinion, therefore, that despite the rulings in Roe v. Wade and Doe v. Bolton and the absence of any newly enacted statute to replace those declared unconstitutional, the lawful performance of an abortion, other than one that is self-induced, presently is limited in Texas to those performed by persons properly licensed to practice medicine.

## II.  Requirement that Abortion Be Performed in a
### Licensed Hospital

The Georgia statute under consideration in Doe v. Bolton, supra,
required that abortions be performed in hospitals accredited by the Joint
Commission on Accreditation of Hospitals.

The Court held the requirement unconstitutional because there was no
showing that only such a hospital might meet the legitimate interests of
the State in assuring the quality of an abortion during the full term of
pregnancy.  It said:

> This is not to say that Georgia may not or
> should not, from and after the end of the first
> trimester, adopt standards for licensing all
> facilities where abortions may be performed so
> long as those standards are legitimately related
> to the objective the State seeks to accomplish.
> . . . We feel compelled to agree with appellants
> that the State must show more than it has in order
> to prove that only the full resources of a licensed
> hospital, rather than those of some other approp-
> riately licensed institution, satisfy these health
> interests. . . . In so holding we naturally express
> no opinion on the medical judgment involved in any
> particular case, that is, whether the patient's
> situation is such that an abortion should be per-
> formed in a hospital rather than in some other
> facility.  (410 U.S.  at 194, 195)

We interpret this language to mean that, to the extent it is shown that
other no less dangerous procedures may be performed in other appropriate
facilities not licensed as hospitals, so, too, during the first trimester, an
abortion may be performed in such appropriate facilities. Hardy v. Vuitch,
473 F.2d 1370 (4th Cir. 1973), cert. den., 414 U.S. 824 (1973). We further
interpret the current case law to hold that the State may require all such
facilities to meet certain reasonable standards and even be licensed so long
as those requirements are not made applicable solely to those facilities
in which abortions are performed.  See Word v. Poelker, 42 U.S.L.W.
2448 (8th Cir. Feb. 20, 1974).

Texas does have a Texas Hospital Licensing Law (Article 4437f, V. T. C. S. ) which makes it a misdemeanor punishable by fine to establish or operate a hospital without a license, defining "hospital" in rather broad terms. We are of the opinion, therefore, that, while the State may not require an abortion to be performed solely in a licensed hospital during the first trimester, nevertheless, if it is performed in a facility which comes within the definition of "hospital" as contained in the Texas Hospital Licensing Law, the facility will be subject to the same regulation to which other hospitals are subjected. It would appear then that further regulation in this area, insofar as the first trimester is concerned, will have to be by statute applicable to facilities generally and not just those performing abortions. Word v. Poelker, supra. But see Friendship Medical Center v. Chicago Board of Health, 367 F.Supp. 594 (N.D. Ill. 1973).

After the first trimester, the State may adopt regulations aimed specifically at facilities in which abortions may be performed. The Court, in Doe v. Bolton, said:

> This is not to say that Georgia may not or
> should not, from and after the end of the first
> trimester, adopt standards for licensing all
> facilities where abortions may be performed so
> long as those standards are legitimately rela-
> ted to the objective the State seeks to accomplish.
> . . . (410 U.S. at 194, 195)

Also see Word v. Poelker, supra.

In Roe v. Wade, referring to permissible state action after the first trimester, the Court listed as areas of permissible regulation the facility in which an abortion was to be performed, "that is, whether it must be a hospital or may be a clinic or some other place of less-than-hospital status; as to the licensing of the facility; and the like." (410 U.S. at 163).

### III.  May Committee Approval Be Required

The Georgia statute construed in Bolton required approval of the abortion in advance by a committee of the medical staff of the hospital in which it was to be performed.  The Court held that a woman has a right to receive medical care in accordance with the judgment of a licensed physician and the physician has a right to administer such care unobstructed by the imposition of such overview.

### IV.  Whether Concurrence of Other Physicians May Be Required

The Georgia statute construed in Bolton required that the judgment of the patient's physician be "reduced to writing and concurred in by at least two other physicians duly licensed to practice medicine and surgery . . . " (410 U.S. at 203).  This too, was held unconstitutional by the Court on the grounds that the judgment of the attending physician that abortion was necessary was sufficient.  A similar requirement has been held unconstitutional as discriminating against the poor.  Doe v. Rampton, 366 F.Supp. 189 (D. Utah, 1973).

### V.  May a Hospital Refuse To Permit the Performance of an Abortion

In Doe v. Bolton, the statute specifically provided that nothing in it should require a hospital to admit a patient for the purposes of an abortion.  Without discussing the constitutionality of that statute, the Supreme Court cited it as protection to the hospital rendering approval by a hospital committee unnecessary.

The right of a hospital to deny use of its facilities for an abortion was directly presented in Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973).  The plaintiff's attending physician, who had determined that, in his medical judgment, the abortion was proper, was a member of the staff of the hospital.  However, the hospital had rules strictly limiting the circumstances under which an abortion might be performed, not including the circumstances of this case.

The hospital was regulated by the state and had received Federal funds. Citing Roe v. Wade and Doe v. Bolton, the court said:

> The rationale of those cases is, however, inapplicable to private institutions. There is no constitutional objection to the decision by a purely private hospital that it will not permit its facilities to be used for the performance of abortions. We think it is also clear that if a state is completely neutral on the question whether private hospitals shall perform abortions, the state may expressly authorize such hospitals to answer that question for themselves. (479 F.2d at 759-760).

The court found nothing in the receipt by the hospital of Federal funds to require any different conclusion. The Congress of the United States in June of 1973 adopted an amendment to the Developmental Services and Facilities Construction Act (42 U.S.C., Sec. 300a-7) to provide that receipt of federal funds does not authorize a court or other person to require individuals or hospitals to perform abortions.

In Allen v. Sisters of St. Josephs, 361 F.Supp. 1212 (N.D. Tex., 1973), the court held that a private hospital receiving Hill-Burton and welfare funds was not acting under color of law and was not required to perform sterilizations or abortions by 42 U.S.C., Sec. 1983. Since this case was subsequent to Roe v. Wade, it impliedly indicates that there was no state action involved; therefore the hospital was under no constitutional compulsion to provide the requested services.

Hathaway v. Worchester City Hospital, 475 F.2d 701 (1st Cir., 1973) involved a decision as to whether or not the hospital could be compelled to allow its facilities to be used for the performance of a sterilization. However, we believe its rationale and reasoning is equally applicable to the performance of an abortion. The hospital was a municipal hospital established under state law for the purpose of short term hospitalization.

The court there stated:

> . . . [I]t seems clear, after Roe and Doe, that
> a fundamental interest is involved, requiring a
> compelling rationale to justify permitting some
> hospital surgical procedures and banning another
> involving no greater risk or demand on staff and
> facilities.  While Roe and Doe dealt with a woman's
> decision whether or not to terminate a particular
> pregnancy, a decision to terminate the possibility
> of any future pregnancy would seem to embrace
> all of the factors deemed important by the Court
> in Roe in finding a fundamental interest, 410 U.S.
> at 155,  93 S.Ct. 705, but in magnified form, par-
> ticularly so in this case given the demonstrated
> danger to appellant's life and the eight existing
> children.  (475 F.2d at 705)

The Court held that in the absence of outright prohibition of other
surgical procedures of equal risk the hospital's unique ban on sterilization
violated the Equal Protection Clause of the Fourteenth Amendment.

The Court was careful to say that it was not requiring maintenance of
the hospital or retention of its present size, staff, or facilities.  The
hospital was not required to perform all kinds of surgical procedures.
It however was constitutionally required to afford the same treatment
and medical care to persons undergoing medically indistinguishable
surgical procedures.  The specific question of abortions in public hos-
pitals was considered in Nyberg v. City of Virginia, 361 F.Supp. 932
(D. Minn. 1973), wherein the court, following Hathaway, supra, held
that the hospital could not prohibit a physician on its staff from using the
hospital's facilities for the performance of abortions.  In addition, a
statute giving all hospitals permission to refuse to perform abortions
has been held unconstitutional by a three judge court.  Doe v. Rampton,
supra.

The available authorities then hold that private hospitals may decline
to permit the performance of abortions within their facilities, but that
public hospitals may only prohibit performance of abortions if other
similar procedures are likewise prohibited, that is to say abortions may
not be singled out.  On the other hand, if the hospital specializes in one
type of treatment only then it may refuse to perform abortions.

## VI.   May a Physician Refuse To Perform
## an Abortion

In Doe v. Bolton, the Court said:

> . . . [A] physician or any other employee has
> the right to refrain, for moral or religious
> reasons from participating in the abortion pro-
> cedure . . .   (410 U.S. at 197, 198)

In Texas the relationship of a physician and his patient is contractual and wholly voluntary.  A physician is under no legal obligation to practice his profession or to render services to any particular person.  Childs v. Weis, 440 S.W.2d 104 (Tex. Civ. App., Dallas, 1969, no writ).

It has been held further that a physician practicing in a public hospital nevertheless retains his identity and cannot permit the institution free use of his services as if he were an employee.  Attorney General Opinion M-912 (1971); Attorney General Opinion WW-278 (1957).

## VII.   Rights, if any, of Father of the Child and Parents of a
## Pregnant Minor

In a footnote to its principle opinion in Roe v. Wade (410 U.S. at 165) the Supreme Court states:

> Neither in this opinion nor in Doe v. Bolton . . .
> do we discuss the father's rights, if any exist in the
> constitutional context, in the abortion decision.  No
> paternal right has been asserted in either of the cases,
> and the Texas and the Georgia statutes on their face
> take no cognizance of the father.  We are aware that
> some statutes recognize the father under certain cir-
> cumstances . . . We need not now decide whether
> provisions of this kind are constitutional.

In at least four post Roe decisions the question has been considered.  In Doe v. Bellin Memorial Hospital, supra, it was urged that the case should not be decided because of the failure of the plaintiffs to join the putative father as a party.  The court held he was not a necessary party stating that

it could find nothing in prior decisions of the Supreme Court to suggest that the right of the woman to make the abortion decision was conditioned on the consent of the putative father.

Similarly, in Jones v. Smith, 278 So. 2d 339 (Fla. App., 1973), cert. denied, 94 S. Ct. 1486 (1974), it was the putative father who brought the action to restrain the mother of his unborn child from obtaining an abortion. The court held that the decision to terminate a pregnancy was a personal decision to be made by the mother and her attending physician and that the putative father had no part in it.

Statutes which required permission of the father and of the parents of a pregnant minor have been held unconstitutional by two three judge courts, in Doe v. Rampton, supra, and Coe v. Gerstein, 42 U.S. L. W. 3662 (S. D. Fla. August 14, 1973), as impermissible restrictions upon the mother's right of privacy as exercised in her decision concerning an abortion.

In the absence of further Supreme Court pronouncement it is impossible to state categorically that legislation giving the putative father a guaranteed voice in the abortion decision would be unconstitutional but it is clear from the available authorities that such legislation would be subject to severe constitutional question.

## PROPOSED LEGISLATION

Sponsors of proposed legislation in the next regular session of the Legislature should be guided by the principles discussed herein, together with such additional case authority as becomes available hereafter. We recognize that the United States Supreme Court has not dealt with all of the possible legal questions which can arise from specific legislative proposals. Further, we know that in all probability, in the not too distant future, there will be additional legal guidance available to us dealing with some of the areas in which legislative interest has been expressed.

Therefore, we have considered it to be the better course of action for this office to issue letters advisory dealing with specific legislative proposals in the abortion areas at a time following the convening of the 64th Legislature.   Meanwhile, copies of this opinion are being forwarded to Honorable O.H. "Ike" Harris and Honorable Bob Hendricks, Chairman, respectively, of the Senate Committee on Jurisprudence and the House Committee on Criminal Jurisprudence, for their general guidance in connection with the drafting of any proposed legislation by their respective committees or their members.

## SUMMARY

1.   Articles 1191, 1192, 1193, 1194 and 1196, Texas Penal Code, have been held unconstitutional and are no longer of any effect.   Article 1195 is still a valid statute but applies only to those situations in which the victim is in the process of being born.   Therefore, there are now no laws in this State regulating abortion, per se.

2.   During the first trimester of a woman's pregnancy the decision of whether or  not an abortion is to be performed is a decision to be made by the pregnant woman and her physician.   Existing statutes concerning the practice of medicine limit to licensed physicians those who may perform an abortion.   To the extent that, even during the first trimester, an abortion is performed in an institution qualifying as a hospital under the Texas Hospital Licensing Act, the state may regulate its facilities and services. The state may require any facilities used during such period to meet reasonable standards and be licensed so long as such requirements are not made applicable solely to those facilities where abortions are performed.

3.  During the second and third trimester of the woman's pregnancy the State may regulate the abortion procedure and, during the third trimester, proscribe abortion except where it is necessary for the preservation of the life or the health of the mother.  The State may adopt laws regulating those who may perform abortions and the places where they may be performed during the second and third trimesters.

4.  Private physicians may refuse to perform abortion.  Private hospitals may refuse to make their facilities available for the performance of abortions, but the state may not restrict abortions by making public hospital facilities unavailable.

5.  Proposed legislation must conform to the guidelines pronounced by the United States Supreme Court in Roe v. Wade and related cases.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

3.  During the second and third trimester of the woman's pregnancy the State may regulate the abortion procedure and, during the third trimester, proscribe abortion except where it is necessary for the preservation of the life or the health of the mother.  The State may adopt laws regulating those who may perform abortions and the places where they may be performed during the second and third trimesters.

4.  Private physicians may refuse to perform abortion.  Private hospitals may refuse to make their facilities available for the performance of abortions, but the state may not restrict abortions by making public hospital facilities unavailable.

5.  Proposed legislation must conform to the guidelines pronounced by the United States Supreme Court in Roe v. Wade and related cases.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee